UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RAMON ABREU                                                             Index No.: 17-cv-07145(SJ)(CLP)

         Plaintiff,      **FIRST AMENDED COMPLAINT**

 -against-           Plaintiff Demands Trial by Jury

CITY OF NEW YORK,
POLICE OFFICER ANDREW PAGANO,
POLICE OFFICER DANIEL CREREND, *and*
LIEUTENANT DANIEL LACALAMITA,

         Defendants.

------------------------------------------------------------X

   Plaintiff, RAMON ABREU, by his attorney, Alexis G. Padilla, Esq., complaining of the defendants, the CITY OF NEW YORK, Police Officer ANDREW PAGANO, shield #4563 ("PAGANO"), Police Officer DANIEL CREREND, shield #24159 ("CRERAND"), and Lieutenant DANIEL LACALAMITA, tax #935146 ("LACALAMITA") , upon information and belief alleges as follows:

## PRELIMINARY STATEMENT

   1.  This is a civil rights action in which the plaintiff, RAMON ABREU, seeks relief for the defendants' violation of his rights as secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

   2.  This action is brought pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

conferred upon this court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that the events giving rise to this Complaint occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

4. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

5. Plaintiff is a United States citizen of full age residing in Kings County, New York.

6. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of the Defendant Police Officer.

7. Defendant Police Officer ANDREW PAGANO was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the New York Police Department, a municipal agency of the City of New York. At all times relevant herein, defendant PAGANO acted under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York Police Department, in the course and

scope of his duties and functions as an officer, agent, servant and employee of the City of New York, was acting for, and on behalf of, and with the power and authority vested in him by the City of New York and the New York Police Department, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duty. He is sued individually and in his official capacity.

8. Defendant Police Officer DANIEL CREREND was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the New York Police Department, a municipal agency of the City of New York. At all times relevant herein, defendant CREREND acted under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York Police Department, in the course and scope of his duties and functions as an officer, agent, servant and employee of the City of New York, was acting for, and on behalf of, and with the power and authority vested in him by the City of New York and the New York Police Department, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duty. He is sued individually and in his official capacity.

9. Defendant Lieutenant DANIEL LACALAMITA was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the New York Police Department, a municipal agency of the City of New York. At all times relevant herein, defendant LACALAMITA acted under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York Police Department, in the course and scope of his duties and functions as an officer, agent, servant and employee of the City of New York, was acting for, and on behalf of, and with the power and authority vested in him by the City of New York and the New York Police Department, and was otherwise

performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duty. He is sued individually and in his official capacity.

## STATEMENT OF FACTS

10. On or about May 19, 2017 at approximately midnight in front of 370 Bushwick Avenue in Brooklyn, plaintiff was present with numerous others and in possession of a boom-box speaker.

11. Police officers, including the defendants, arrived on the scene.

12. Defendant PAGANO and asked plaintiff to turn off the music that was playing from the speaker.

13. Plaintiff complied with defendant PAGANO order to turn off the music.

14. Plaintiff put the speaker on the ground and sat on top of it.

15. Defendants CREREND and LACALAMITA then came over to plaintiff and engaged him.

16. Plaintiff began to explain why there were so many people in front of the building on that particular night and tried to reason with the officers concerning the numerous individuals on the scene who were beginning to act unruly. Plaintiff stated in sum and substance that he could get everyone to leave if the police would refrain from forcing them to leave.

17. The defendants demanded that plaintiff hand over his speaker, which was not playing music at the time.

18. Plaintiff stated that he had already complied with an order to turn the music off and that there was no reason for his speaker to be seized.

19. Defendant PAGANO then grabbed plaintiff by the shoulder and neck and pulled him away from the speaker.

20. Simultaneously, defendant CREREND unholstered a Taser and attempted to discharge it into plaintiff's chest but plaintiff was pulled away from him by defendant PAGANO.

21. Defendant CRERAND then hit plaintiff in on the side of the head with the handle of the Taser.

22. Defendants began to strike plaintiff about the body with their hands.

23. Defendants placed plaintiff in handcuffs.

24. After plaintiff was in handcuffs, one of the officers sprayed pepper spray directly into plaintiff's face.

25. Defendants then pushed plaintiff up against the short metal fence that lines the courtyard in front of 370 Bushwick Avenue.

26. Plaintiff's body ended up bent over the fence, with the sharp ends of the metal planks causing pain and causing injury to the left side of his body.

27. Plaintiff was then thrown to the ground by defendant PAGANO and held there momentarily before being picked up and brought to a police vehicle.

28. Plaintiff was placed inside the back seat of the vehicle by defendant PAGANO.

29. Defendant PAGANO also got into the back seat of the vehicle and while plaintiff was still handcuffed, began to punch him repeatedly about the body.

30. Plaintiff was then transported to PSA3 in Brooklyn where he was held for approximately thirty minutes before an ambulance was called and plaintiff was transferred to Woodhaul Hospital, where he was handcuffed to a hospital bed for the next five hours before seeing a doctor.

31.     After being treated at Woodhaul, plaintiff was transported back to PSA3 and held there for approximately one hour before he was transferred to central booking where he was arraigned and released on his own recognizance approximately sixteen hours later.

32.     The accusatory instrument filed by defendant PAGANO contained numerous false statements.

33.     Defendant PAGANO claimed that the volume of the music playing from defendant's speaker interfered with his ability to hear his radio but video of the incident shows defendant PAGANO speaking with plaintiff at a normal volume and the audio contains no loud music.

34.     Defendant PAGANO further claimed that plaintiff turned the music back on after initially turning it off when told to. Plaintiff denies that he ever turned the music back on after being told to turn it off and audio of the incident does not support this allegation.

35.     Defendant PAGANO claimed that plaintiff resisted a lawful arrest by swinging his arms and elbows, pressing his arms to his chest and holding onto a fence while the defendants attempted to place him in handcuffs.

36.     Plaintiff denies resisting in any manner and specifically in the manner described by defendant PAGANO.

37.      Plaintiff eventually resolved the charges against him by accepting an Adjournment in Contemplation of Dismissal. The charges filed by defendant PAGANO are currently scheduled to be dismissed on March 16, 2018.

## **AS FOR A FIRST CAUSE OF ACTION**

*DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983 AS AGAINST ALL DEFENDANTS*

38. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

39. At all times during the events described above defendants lacked probable cause to use force against plaintiff.

40. At all times during the events described above defendants lacked probable cause to arrest plaintiff.

41. At all times during the events describe above defendants lacked probable cause to charge plaintiff with criminal conduct.

42. All of the aforementioned acts of defendants were carried out under the color of state law.

43. All of the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

44. The acts complained of were carried out by the defendants in their capacity as police officers, with all actual and/or apparent authority afforded thereto.

45. The acts complained of deprived plaintiff of his constitutional rights to be free from excessive force and false arrest.

## **AS FOR A SECOND CAUSE OF ACTION**

### *MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 AGAINST THE CITY OF NEW YORK*

46. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

47. The CITY OF NEW YORK directly caused the constitutional violations suffered by plaintiff, and is liable for the damages suffered by plaintiff as a result of the conduct of the police officer defendants because their conduct was a direct consequence of inadequate training and supervision of police officers by defendant CITY OF NEW YORK and its agent, the New York Police Department.

48. At all times relevant to this complaint defendant CITY OF NEW YORK through its agent, the New York Police Department, had in effect policies, practices, and customs that allow for police officers to use force, make arrests and file criminal charges without probable cause and in flagrant violation of their sworn oaths to uphold the Constitution.

49. At all times relevant to this complaint it was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise, and discipline its police officers, thereby failing to adequately discourage reckless misadventures of the sort described in this complaint.

50. As a result of the policies and customs of the CITY OF NEW YORK and its agency the New York Police Department, police officers – including the defendants on the night of the incident in question – believe that their unconstitutional actions will not result in discipline but will in fact be tolerated.

51. The wrongful polices, practices and customs complained of herein, demonstrate a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the

constitutional rights of persons within the city, and were the direct and proximate cause of the violations of plaintiff's rights alleged herein.

**WHEREFORE,** plaintiff demands relief jointly and severally against all of the defendants for compensatory damages in an amount to be determined by a jury; punitive damages in an amount to be determined by a jury; costs, interest and attorney's fees, and such other and further relief as this Court may deem just and proper.

Dated: 04/23/2018
      Brooklyn, NY

By:     /s/Alexis G. Padilla
    Alexis G. Padilla, Esq. [AP8285]
    *Attorney for Plaintiff*
    *Ramon Abreu*
    575 Decatur Street #3
    Brooklyn, NY 11233
    Tel. 917-238-2993
    alexpadilla722@gmail.com